Wilson v. Brock                          CV-01-284-JD  03/19/03

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Gary D. Wilson

        v.                              Civil No. 01-284-JD
                                        Opinion No. 2003 DNH 046
David Brock, et al.


O R D E R


The plaintiff, Gary D. Wilson, proceeding pro se, brought civil rights and state law claims against his former wife, state and federal officials, agencies, a town, and town and county officers.  Wilson's claims have been dismissed as to all of the defendants except his former wife, Julie Pierce, and Brenda Blonigen, a sergeant in the Rockingham County Sheriff's Department.  Sergeant Blonigen moves for summary judgment as to the claims against her.


Background

Gary Wilson's claims arise from a custody dispute with his former wife, Julie Pierce, involving their daughter, Jennifer. At the end of Jennifer's summer stay with Wilson on July 28, 1998, he refused to return her to Pierce.  Wilson filed an ex parte motion in state court to change the terms of the custody arrangement.  On July 29, 1998, Judge Gray, sitting in the Rockingham County Superior Court, denied Wilson's motion to

change custody and ordered Wilson to immediately return Jennifer to her mother. When Wilson would not release Jennifer and would not disclose her location, he was found to be in contempt of court and was ordered held at the Rockingham County Jail until he disclosed his daughter's location and she was returned to her mother. The daughter was returned to her mother by Wilson's relatives on July 30, 1998.

The incident was investigated by Jim Houghton, a special investigator with the Rockingham County Attorney's Office. He recommended that the only criminal charge that might arise from the incident was a charge against Wilson for interference with custody.

In late February of 1999, Assistant County Attorney Thomas Reid told Blonigen that Judge Gray had asked for an inquiry into the Wilson incident for potential charges of interference with custody in violation of New Hampshire Revised Statute Annotated ("RSA") § 633:4. Reid gave Blonigen the case file which included the investigative report by Houghton. Blonigen interviewed Pierce by telephone and asked her to send a statement by fax. She reviewed the Wilson-Pierce marital file and the pleadings in the July 28 proceeding before Judge Gray.

Blonigen prepared an affidavit in support of an arrest warrant and a criminal complaint against Wilson, charging Wilson with the misdemeanor of interference with custody in violation of

2

RSA 633:4. The arrest warrant issued on March 18, 1999, after being reviewed and signed by Carol Taylor-Wright, clerk of the Exeter District Court. Blonigen talked to Wilson on the telephone on March 24, and he agreed to surrender. He was booked at the sheriff's office; his bail was set and tendered, and he was released. Counsel representing Wilson moved to dismiss the charge because Wilson's custody rights had never been revoked by the court so that a violation of the 1998 version of RSA 633:4 would not be proven.[1] The charge against Wilson was "nol prossed" on August 23, 1999.

## Discussion

Wilson alleges that Blonigen violated his constitutional rights by arresting him for violation of RSA 633:4 based on false information. Blonigen asserts that she is entitled to qualified immunity, and alternatively seeks summary judgment on the merits of Wilson's claims, construed as state law tort claims.[2] Wilson

---

[1]Until January 1, 1999, RSA 633:4, II provided that a person was guilty of a misdemeanor if he knowingly concealed or detained a child under the age of 18 or caused that to happen "with the intent to detain or conceal such child from a parent . . . having lawful charge of such child" and if he did "not have a right of custody with respect to such child." RSA 633:4 was amended, effective January 1, 1999, to eliminate the question of custody and to, instead, refer to RSA 458:17.

[2]It appears that Blonigen's counsel may have inadvertently filed a preliminary draft of the motion and memorandum rather

3

opposes summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a claim of qualified immunity, the court must first determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right.'" Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). If that appears to be true, then "the court must 'proceed to determine whether that right was clearly established at the time of the alleged violation.'" Id. Third, if the first two steps are met, the court must decide "whether an objectively reasonable officer, performing discretionary functions, would have understood his or her conduct violated that clearly established constitutional right." Id.

In this case, Wilson alleges that Blonigen arrested him without probable cause based on her affidavit which she knew to be false. He contends that because of the illegal arrest, he was forced to agree to have no contact with his daughter as a bail condition. Although Wilson cites a variety of asserted

_____

than a thoroughly prepared final version.

4

constitutional violations, his allegations of an illegal arrest fall within the protection of the Fourth Amendment and his allegations of interference with family relations fall under the due process protections of the Fourteenth Amendment.  See, e.g., Troxel v. Granville, 530 U.S. 57, 66 (2000) (family relationship); Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998) (arrest).  These rights were clearly established before 1999, when Wilson was arrested.  See, e.g., Troxel, 530 U.S. at 66 (parent's right to custody of children); Abreu-Guzman, 241 F.3d at 73 (right to arrest based on probably cause); Aponte Matos, 135 F.3d at 187 (same in context of false affidavit); Egervary v. Young, 159 F. Supp. 2d 132, 161 (E.D. Pa. 2001) (parent's right to custody of children).

The remaining question is whether an objectively reasonable officer, in Blonigen's situation, would have understood that her actions violated Wilson's constitutional rights.  Under the circumstances of this case, the answer is no.

Wilson contends that Blonigen's affidavit did not support probable cause to arrest him because RSA 633:4, in the applicable version at the time, required both that he knowingly concealed or detained a child from her parent with "lawful charge," and that he not have "a right of custody with respect to such child."  He argues that because he had a right of legal custody to Jennifer at the time he refused to return her to her mother, no violation

5

of RSA 633:4 occurred. That was ultimately the reason the charges were dropped against him.

Blonigen's affidavit, however, shows that she researched the custody agreement between Wilson and Pierce and that she accurately stated that Wilson had physical custody rights during summer visitation. She then noted that Judge Gray ordered Wilson to transfer Jennifer immediately to her mother and that Wilson refused. Wilson has not shown a factual issue as to the truth of Blonigen's statements in the affidavit.

A reasonable officer in Blonigen's position, as Blonigen apparently did, could interpret Judge Gray's order to mean that all custody rights were transferred to Jennifer's mother, negating Wilson's custody rights. Nothing in the record suggests that Blonigen intentionally misunderstood or misapplied the import of Judge Gray's order. "Qualified immunity is available to officials who err in their duties so long as the mistake is one that a 'reasonable' officer could have made." Liu v. Phillips, 234 F.3d 55, 57 (1st Cir. 2000). That is the case here.[3] Therefore, Blonigen is entitled to qualified immunity from liability as to Wilson's claims based on the alleged false

---

[3]Counsel's argument based on a misunderstanding of the applicable law does not appear to fit the circumstances of this case. However, to the extent Blonigen may also have relied on the amended version of RSA 633:4, given the time sequence, her reliance would have been reasonable.

arrest and the resulting bail condition.

With the resolution of Wilson's claims against Blonigen, all of his claims, except those alleged against Julie Pierce, have been dismissed. Wilson alleges only state law claims against Pierce. Although Wilson provided a post office box number in Manchester, New Hampshire, in his complaint, he appears to have been a resident of Florida from the inception of this suit. He alleges that Pierce is also a resident of Florida. Therefore, the only basis for subject matter jurisdiction as to Wilson's claims against Pierce appears to be supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

When federal claims, which were the basis of subject matter jurisdiction, have been dismissed, the court is obligated to reassess the jurisdictional basis for the state claims. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Courts generally decline to exercise supplemental jurisdiction over state claims if the federal predicate is dismissed early in the litigation." O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 273 (1st Cir. 2001). "Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense,

the state claims should be dismissed as well." Camelio, 137 F.3d at 672.

Therefore, the court declines supplemental jurisdiction as to the state law claims, the only remaining claims in this case. Those claims are dismissed, without prejudice, for lack of subject matter jurisdiction.

## Conclusion

For the foregoing reasons, the motion for summary judgment filed by Sergeant Blonigen (document 55) is granted. The claims against Julie Pierce are dismissed without prejudice for lack of subject matter jurisdiction.

As all claims against all of the defendants have now been dismissed, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 19, 2003

cc:  Gary D. Wilson, pro se
     John A. Curran, Esquire
     Julie A. Pierce, pro se

8